## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ROBERT L. BROCKWAY, JR.,

                 Plaintiff,

  v.

VA CONNECTICUT HEALTHCARE
SYSTEM,

              Defendant.

3:10 - CV- 719 (CSH)

## RULING ON DEFENDANT'S MOTION TO QUASH SUBPOENAS AND MOTION FOR PROTECTIVE ORDER

HAIGHT, Senior District Judge:

Plaintiff, Robert L. Brockway, Jr. ("plaintiff") has brought the present personal injury action against defendant VA Connecticut Healthcare System ("defendant" or "VA") under the Federal Tort Claims Act,[1] alleging that the Department of Veterans Affairs wrongfully permitted an improper medical diagnosis of plaintiff as "Bi-Polar" to remain on his medical records.  Doc. #1, p. 2 (C). He claims that the diagnosis was made "without proper medical authority" and caused him "unne[ce]ssary misery, stigma, and shame." *Id.*, p. 2 (C), p. 3 (D).   He thus seeks to recover $5 million in damages for "extreme harm to his professional career, family life, and reputation." *Id.*, p. 5 (F), p. 7 (sections 10 & 12b).

Pending before the Court is defendant's "Motion for Protective Order" (Doc. #28) in which

---

[1]The Federal Tort Claims Act is set forth at 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, *et seq.*

defendant requests that the Court enter an order to (1) quash subpoenas issued by plaintiff for the deposition of three VA employees and (2) require that all depositions in this matter be held at the United States Attorney's Office in New Haven, Connecticut. The period for plaintiff to respond to defendant's motion expired on March 3, 2011, but plaintiff has neither objected nor responded.

## I.     FACTS

On February 8, 2011, plaintiff sent an email to defendant's counsel, Assistant United States Attorney ("AUSA") Lauren M. Nash,[2] informing her that on February 2, 2011, the Clerk's Office issued three subpoenas, at plaintiff's request, for depositions of three VA employees;[3] plaintiff brought these subpoenas to the Marshal's Office for service on February 8, 2011; and all three depositions were scheduled to take place at plaintiff's apartment at 38 Boston Terrace, Guilford, Connecticut, on February 14, 2011. Doc. #28, Ex. 1, p. 5. AUSA Nash replied to plaintiff immediately, advising him that she was unavailable on that date "due to a prior commitment in federal court."[4] *Id.*, p. 4. She further stated that she would "like any depositions to be held at [her] office," the United States Attorney's Office in New Haven (hereinafter "USAO"). *Id.* She also asked plaintiff if he would object if she requested that the Court extend the 2/28/2011 discovery

_____

[2]Because the VA Connecticut Healthcare System is operated by the Department of Veterans Affairs, an agency of the United States of America, defendant is represented by the United States Attorney's Office.

[3]According to an email from plaintiff to AUSA Nash, dated 2/8/2011, the three VA employees included John B. Garvey, M.D., Shuba Rodriques, M.D., and the VA Director of Medical Records. Doc. #28, Ex. 1, p. 5.

[4]On February 14, 2011, AUSA Nash was scheduled to attend a settlement conference in Bridgeport before Magistrate Judge William I. Garfinkel in the medical malpractice case of *Goncalves v. United States,* 3:09-cv-1691 (MRK). *See* Doc. #28, p. 3-4.

deadline.  *Id.*

Plaintiff responded by stating that "the Clerk's Office [had already] issued the subpoenas with the dates, time, and place as specified; accordingly, it seems to me that the Court should determine if there should be any changes, or allowances in regard to your requests in this matter." *Id.*  AUSA Nash then asked plaintiff explicitly whether he was refusing to reschedule the depositions based on her unavailability.  *Id.*, p. 3.  If so, she planned to "file a motion in court to quash the subpoenas" as soon as she received them.  *Id.*  Plaintiff responded that he respected her position, but the "subpoenas were issued as they stand" and thus not subject to change.  *Id.*  He concluded that "the Court can hear and decide" whether the subpoenas should be quashed.  *Id.*

AUSA Nash then emailed plaintiff to announce, "In light of these issues, I am going to seek a 45-day extension of discovery.  Do you object?"  *Id.*, p. 2.  Plaintiff replied, "Yes, I object  to any extension to discovery whatsoever."  *Id.*

On the next day, February 9, 2011, AUSA Nash informed plaintiff she would like to take his deposition.  *Id.*, p. 1-2.  She also expressed her desire to reschedule the VA employees' depositions, stating "I will get back to you with dates for the doctors' depositions when I speak to them about their availability."  *Id.*, p. 1.

Plaintiff wrote back to say that he was "willing" to testify and  "not refusing" to do so, but that he presently declined consent on two bases.  *Id.*, p. 1.[5]  First, he stated that, as a *pro se* litigant,

_____

[5]In an email dated February 9, 2011, to AUSA Nash, plaintiff explained his refusal to be deposed as follows:

> I am not aware exactly what my constitutional rights are.  I do not have legal counsel, and I would need legal advise [sic] from an attorney who would  represent me, before I could testify.

he would not testify without legal advice from an attorney.  *Id.*   Second, he asserted his belief that he had already "made" his case to the government and "submitted all information required."  *Id.* In plaintiff's opinion, defendant did not require his testimony because he had already submitted his case.[6]  *Id.*

## II.    **DISCUSSION**

Federal Rule of Civil Procedure 26(b)(1), captioned "Duty to Disclose; General Provisions Governing Discovery," defines the scope of discovery.   It provides that  "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Generally, the standard to determine whether something is discoverable under Rule 26 is broader than that used to rule on admissibility at trial.  *F.D.I.C. v. Wachovia Ins. Services*, No. 3:05-CV-929 (CFD), 2007 WL 2460685, at *3 (D. Conn. Aug. 27, 2007).   Thus, even if a matter would be inadmissible at trial, it is "relevant" under Rule 26(b)(1) if it is "reasonably calculated to lead to

---

I am not refusing I just need legal advise [sic]. . .
. . .
Nonetheless, I believe that I should be represented by legal counsel, provided by the government of the United States before I even answer your question about appearing at my own personal deposition, in a government setting, questioned by a federal attorney, without my own attorney being there representing my interests.

Doc. #28, Ex. 1, p. 1.

[6]Plaintiff's email of February 9, 2011, to AUSA Nash thus asserted, "I have made my case to the government.  I have submitted all information required.  What more does the government require?"  Doc. #28, Ex.1, p. 1.

the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Courts permit discovery "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991) (quoting *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also El Badrawi v. Dep't of Homeland Sec.*, 258 F.R.D. 198, 201-02 (D. Conn. 2009). In essence, plaintiff is generally entitled to depose facts witnesses who possess non-privileged information directly related to, or that may reasonably lead to, any matter bearing on his claim.

The scope of permissible discovery set forth in Rule 26(b)(1) is, however, limited by the following subsection, Rule 26(c), which provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [as requested in this case]. . . (B) specifying terms, including time and place, for the disclosure or discovery." Acting pursuant to Rule 26(c), a court may, for example, prohibit a party from deposing senior corporate executives where "the party has not established that the executive has some unique knowledge pertinent to the issues in the case" or where the party seeking the deposition can obtain the desired information through less intrusive means. *Rodriguez v. SLM Corp.*, No. 3:07-CV-1866 (WWE), 2010 WL 1286989, *2 (D. Conn. Mar. 26, 2010) (internal quotation marks omitted) (compiling cases); *accord Weber v. FujiFilm Medical Systems U.S.A., Inc.*, No. 3:10-CV-401 (JBA), 2011 WL 677278, at *2 (D. Conn. Jan. 24, 2011).

The text of Rule 26(c) is construed liberally to include a wide range of potential harms not explicitly listed. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 413 (E.D.N.Y. 2007) ("Courts are

endowed with broad discretion to tailor protective orders to the circumstances of a particular litigation."). In sum, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

## A. Scheduling of depositions for three VA employees

In the present case, defendant objected to plaintiff's noticed depositions of three VA employees because defendant's counsel, AUSA Nash, was unable to attend on February 14, 2011, the date set forth in the subpoenas. When informed of AUSA Nash's scheduling conflict, a settlement conference in the matter of *Goncalves v. United States*, 3:09-CV-1691 (MRK) (to be held in Bridgeport), plaintiff, perhaps lacking knowledge of the binding nature of such a commitment, refused to reschedule the depositions. Consequently, the date of February 14, 2011, expired and no depositions were taken.

During the pendency of defendant's current motion to quash the subpoenas, no facts or circumstances were presented to the Court to indicate that plaintiff altered his stance with respect to rescheduling these depositions. Moreover, plaintiff failed to object or respond to defendant's motion to quash during the requisite period to do so.[7]

Because plaintiff is a *pro se* litigant, the Court chose to permit him the full response period to object to defendant's motion and thus did not rule prior to February 14, 2011, the intended

---

[7]Pursuant to Local R. Civ. P. 7(a)(1), "[u]nless otherwise ordered by the Court, all memoranda in opposition to any motion shall be filed within twenty-one (21) days of the filing of the motion." Defendant filed its motion on February 10, 2011 (Doc. #28). Thus plaintiff had until March 3, 2011, to respond.

deposition date set forth in the disputed subpoenas.[8]   At the current time, in the continuing absence

of any input from plaintiff, I now find that, although February 14, 2011, has expired, rendering the

intended date of the subpoenas moot, defendant's motion to quash is granted *nunc pro tunc* on two

grounds.[9]  First, plaintiff notified defendant of the three impending VA employees' depositions on

February 8, only four business days prior to February 14, 2011.  As stated *supra*, AUSA Nash had

a pre-existing commitment in another legal matter on that date.  Moreover, two of the three noticed

witnesses were medical doctors and one a VA director, all most likely possessing busy schedules not

easily subject to change on short notice.[10]

Pursuant to Federal Rule of Civil Procedure 30(b)(1), "[a] party who wants to depose a

person by oral questions must give *reasonable* written notice to every other party."   (Emphasis

added).    "Reasonable" in this context may be defined as  "[f]air, proper, or moderate under the

circumstances."  *Black's Law Dictionary* (9th ed. 2009).    Unfortunately, given the exigencies of

both the legal and medical professions, four business days were insufficient for AUSA Nash and the

three VA employees to alter their schedules to attend the depositions.  Under these circumstances,

plaintiff failed to provide defendant with "reasonable" advance notice to make the witnesses

---

[8]Because AUSA Nash informed plaintiff on February 8, 2011 that the depositions would
not take place, they were essentially canceled.  There was thus no need for emergency relief prior
to February 14.

[9]*"Nunc pro tunc"* is defined as "[h]aving retroactive legal effect through a court's
inherent power."  *Black's Law Dictionary* (9th ed. 2009).  Thus, "[w]hen an order is signed
'*nunc pro tunc*' as of a specified date, it means that a thing is now done which should have been
done on the specified date."  *Id.* (citing 35A C.J.S. Federal Civil Procedure § 370, at 556 (1960)).

[10]Being *pro se*, plaintiff may not be aware of the standard practice among counsel of
conferring prior to noticing depositions to ascertain mutually agreed upon dates and times.  Such
conferences assist the smooth, timely implementation of discovery.

available and prepare for depositions by February 14, 2011.[11]  Given this brief notice period, the subpoenas were unduly burdensome to defendant.

Second, upon learning of AUSA Nash's scheduling conflict, a mandatory settlement conference in another legal action, plaintiff refused to reschedule the three depositions.  Instead, he chose to stand irretrievably by the date he had set, insisting that the Court decide whether he be allowed to proceed with the depositions.  While appreciating plaintiff's polite deference to the Court's authority, I must inform him that, during discovery, to the extent that the parties may work out their own discovery schedule, employing a cooperative spirit, both parties may avoid unreasonable expense and delay.

In making this ruling, quashing the subpoenas, the Court thus expresses its strong desire that both parties communicate and work together to promote an efficient discovery process.  Specifically, at this time, the Court does not preclude future depositions of the three VA employees at issue, but instructs both parties to confer in advance on available dates before rescheduling them.  That way, with both parties' agreement, future subpoenas will provide the reasonable notice required for the parties and witnesses to attend.

In sum, henceforth, the Court instructs plaintiff to work constructively with defendant, to reschedule the requested depositions at mutually agreeable times.  Any future contentiousness or obstruction to the discovery process by either party will be looked upon with disfavor and may result in the imposition of sanctions against the party at fault.  *See* Fed. R. Civ. P. 37 (b) (failure to comply with court orders may result in sanctions including, but not limited to, the striking of pleadings in

---

[11]The Court acknowledges that the word "reasonable" is used in this context in a narrowly-defined, legal fashion. The Court does not wish to disparage plaintiff's ability to reason or to suggest that he is an unreasonable person *per se.*

whole or in part; staying of proceedings; preclusion of evidence, claims or defenses; costs and fees; and other appropriate sanctions up to and including dismissal of the action or entry of default judgment); Local R. Civ. P. 16(g) ("The Court may impose sanctions directly against counsel who disobey an order of the Court or intentionally obstruct the effective and efficient administration of justice."). *See also Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 552 (S.D.N.Y. 1989) ("Sanctions, including the striking of pleadings, may be imposed where discovery obligations are ignored, even if no court order has been violated.") (citing *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir.1979)).

### B. Location of depositions

Defendant also requests this Court to enter a protective order to require all depositions in this matter be held at the USAO at 157 Church Street in New Haven, Connecticut.[12] This request is in response to plaintiff noticing the depositions of the three VA witnesses to take place at his apartment at 28 Boston Terrace, Guilford, Connecticut. Defendant impliedly objected to that location by requesting plaintiff to agree that all depositions be held at the USAO in New Haven, "a professional facility, with appropriate amenities and security."[13] Doc. #28, p. 4. Plaintiff adhered to his choice of his residence as the location, leaving the ultimate decision to the Court's determination.

"The Federal Rules of Civil Procedure do not state categorically the location where

---

[12]This office is located at 157 Church Street in New Haven, Connecticut, directly adjacent to the United States District Courthouse at 141 Church Street.

[13]As an alternative, the defendant requests that the depositions take place at the "neutral location" of the United States District Court in New Haven. Doc. #28, p. 4. Due to the volume of pending litigation, conference rooms in the Courthouse are extremely limited in availability and provide no greater comfort or convenience than the USAO.

depositions are to take place." *Ward v. Leclaire*, No. 9:07-CV-0026 (LEK) (RFT), 2008 U.S. Dist. LEXIS 31880, at *13 (N.D.N.Y. April 17, 2008). Rather, pursuant to Rule 26(c)(1) & (2), the court has broad discretion to alter the place of a noticed deposition, upon good cause shown, to protect a party from undue burden or expense. *Buzzeo v. Board of Educ.*, *Hempstead*, 178 F.R.D. 390, 392 (E.D.N.Y.1998) ("Courts retain substantial discretion to designate the site of a deposition") (internal quotations and citation omitted).

In general, the party who notices a deposition is entitled to choose its location. *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, No. 3:07-CV-775 (AHN), 2008 WL 747660, at *2 (D. Conn. Mar. 17, 2008); *Buzzeo*, 178 F.R.D. at 392 (the party that notices the deposition "usually has the right to choose the location"). *See also* Fed. R. Civ. P. 30(b)(1) (dictating that notice "must state the time and place of the deposition"). The noticing party's choice, however, is not dispositive when a court is asked to compel that depositions take place at an alternative location.

Furthermore, the plaintiff is generally the party who must "bear any reasonable burdens of inconvenience that the action represents." *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) (quoting *Fed. Deposit Ins. Co. v. La Antillana, S.A.,* No. 88–CV-2670, 1990 U.S. Dist. LEXIS 13246, at *4 (S.D.N.Y. Oct. 5,1990)). *See also Buzzeo*, 178 F.R.D. at 392. "Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice." *Buzzeo* , 178 F.R.D. at 392; *Media Group, Inc. v. In-finn-ity Productions, Inc.*, No. 3:99-CV-1014 (PCD), 2000 WL 303221, at *1 (D. Conn. Feb. 1, 2000).[14]

---

[14]When a corporation is a party to litigation, there is also a general presumption in favor of conducting depositions at its principal place of business. *Buzzeo*, 178 F.R.D. at 392. "[G]enerally, when the plaintiff seeks to depose the defendant at a location other than the

"A motion for a protective order not to have a deposition at a particular site, or to compel deposition in a particular location, is considered by reviewing three factors of the cost, convenience, and litigation efficiency of the designated location." *Sloniger v. Deja*, No. 09-CV-858S, 2010 WL 5343184, at *5 (W.D.N.Y. Dec. 20, 2010); *Buzzeo*, 178 F.R.D. at 393; *Mill-Run Tours, Inc.*, 124 F.R.D. at 550-51. The Court will thus apply the "good cause" standard of Rule 26(c) through an analysis of the three factors to determine whether defendant's request to hold all depositions at its counsel's office shall be granted.

In the case at bar, plaintiff noticed the depositions of the three VA employees to take place at his private residence in Guilford. Defendant's counsel asserted a preference to hold the depositions at her office because the USAO is "a professional facility, with appropriate amenities and security." Doc. #28, p. 4. Plaintiff replied by requesting, "Please allow us to let the Judge make an appropriate order in regard to your issues." *Id.*

Evaluating the USAO as the potential site for all depositions in this case, the Court must analyze the three factors of cost, convenience, and litigation efficiency. First, "[c]ost considerations

---

defendant's place of business and the defendant objects, the plaintiff has the affirmative burden of demonstrating 'peculiar' circumstances which compel the court to order the depositions to be held in an alternate location." *Morin v. Nationwide Fed. Credit Union*, 229 F.R.D. 362, 363 (D. Conn. 2005) (citing, *inter alia*, *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y.2001)). *See also Ward,* 2008 U.S. Dist. LEXIS 31880, at *14-15; 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.105[3][b] (3d ed. 2006).

In the present case, the defendant "avers that the only proper defendant is the United States of America, and that the relevant location is the VA Connecticut Healthcare System, West Haven Campus." Doc. # 17 (Defendant's Answer), ¶ A. 2. The defendant does not seek to hold depositions at the VA's place of business in West Haven, but rather prefers its counsel's office in New Haven. In any event, where both parties reside within the forum district of Connecticut, the general presumption in deference to a defendant's place of business "loses its significance." *Buzzeo*, 178 F.R.D. at 392.

related to the location of depositions can be viewed through . . . two lenses: the relative abilities of the parties to bear the expense of depositions in a given location, and the effect that the choice of location will have upon the total costs of litigation." *Dagen v. CFC Group Holdings Ltd.*, No. 00 Civ. 54682 (CBM), 2003 WL 21910861, at *3 (S.D.N.Y. Aug. 11, 2003). Cost in this case weighs favorably as a factor for both parties due to the location of the USAO, in downtown New Haven, within the District in which plaintiff brought this action. The USAO is, in fact, directly next door to – virtually within steps of – the United States Courthouse. The USAO is thus a neutral location with respect to cost for both sides as it is situated conveniently within the forum district.

Moreover, to the extent that plaintiff must incur expense and expend time to leave his home and travel to New Haven from Guilford, such expenditures will be modest at best; and legal precedent indicates that, as the party who brought the action, he must be the one to bear any reasonable burden of inconvenience.[15] *See, e.g., Morin*, 229 F.R.D. at 363. Given the fact that the plaintiff initiated this action, the Court finds the requirement of traveling less than half an hour to comprise a minimal burden.[16]

Next, "[f]actors relevant to convenience include convenience of counsel, the defendants' residence, and the extent to which defendants' affairs will be disrupted to and from the depositions."

---

[15]According to calculations by MapQuest, plaintiff's residence at 38 Boston Terrace, Guilford, is approximately 15.75 miles, and 21 minutes by car, away from the United States Attorney's Office at 157 Church Street, New Haven. It thus lies within a reasonable distance for plaintiff to travel.

[16]It is conceivable that the VA employees may obtain a slight advantage in having to drive a shorter distance to New Haven rather than Guilford. Even if this proves true, however, any slight advantage in cost to defendant may be offset by the expense of providing the facility for the depositions, thereby eliminating any potential expenditure by plaintiff for additional amenities or utilities in hosting witnesses and counsel at his home.

*Dagen,* 2003 WL 21910861, at *3; *Mill-Run Tours, Inc.*, 124 F.R.D. at 550.   In the case at bar, the USAO is convenient to all parties concerned and especially defendant.   As previously stated, due to its location next to the Courthouse and only minutes from plaintiff's home, all counsel, witnesses, and parties may travel easily to the site, experiencing no undue interruption or inconvenience in their schedules.   Granted, plaintiff will have to leave his home, but there is no indication in the record that he is immobilized or otherwise unable to make such a brief trip.

The Court recognizes that a government office setting may be unfamiliar to plaintiff, thereby engendering some slight, initial discomfort.   The Court does expect, however, that in hosting the depositions, AUSA Nash will extend the utmost courtesy to plaintiff and his witnesses and make the USAO offices as reasonably comfortable as possible.   Furthermore, in the unlikely event that either party demonstrates hostility or attempts to disrupt the course of any deposition in this action, the Court will deal appropriately with such misconduct at that time.

With respect to the third factor of "litigation efficiency," the Court is advised to examine (1) its own  ability to intervene to resolve disputes during depositions and (2)  the ease or difficulty of the parties and witnesses in bringing relevant documents to the site.   *See, e.g., Sloniger*, 2010 WL 5343184, at *8; *Mill-Run Tours, Inc.*, 124 F.R.D. at 551.   First, as to the prospect of judicial intervention, the USAO is located next door to the Courthouse, fostering rather than preventing any necessary communication with the Court.[17]   Second, neither side has presented any description of the numbers and locations of documents to be examined during the prospective depositions.   There is thus no indication that transportation of documents is an issue in this case.   At the very least, all documents filed with the Court shall be easily obtainable.

---

In analyzing the particular characteristics of the USAO, the fact that it is a functioning business office may maximize efficiency in the deposition process, providing a professional setting (*e.g.*, well-lit conference room), amenities (*e.g.*, restrooms, access to copy machines, faxes, phones), and security. Such an office should provide an appropriate, safe setting for both parties to conduct depositions.

Lastly, with respect to plaintiff's deposition in particular, I note that, to date, plaintiff has solely indicated his refusal to be deposed and not a specific objection to the proposed location.[18] Plaintiff has thus provided the Court with no basis to find that attending depositions at the USAO would impose any undue hardship on him.

Examining cost, convenience, and litigation efficiency, I conclude that, absent objection, there is "good cause" to deem the USAO in New Haven an appropriate, perhaps even optimal, location for all depositions to be taken in this case. Defendant's application for a protective order (Doc. #28) shall be granted. In light of this ruling, the Court urges all parties to work together to conduct discovery at the USAO in a cost and time-efficient manner, thereby minimizing inconvenience to both parties.

### C. Plaintiff's denial of consent to be deposed

Finally, the Court notes that plaintiff based his negative response to defendant's request to depose him on his lack of counsel. Doc. #28, Ex. 1, p. 1. Plaintiff is hereby advised that lack of counsel is not a lawful justification to decline being deposed. Plaintiff has brought this action *pro*

---

[18]Plaintiff emailed AUSA Nash on February 9, 2011, that he preferred not to be deposed in a "government setting" without his own government attorney present. Doc. #28, Ex. 1, p. 1. Aside from an implied discomfort or lack of feeling prepared, he did not specify any particular problems with that setting.

*se*, representing himself, and as such, is duty-bound to participate in all phases of the litigation, including, as requested, presenting himself as a witness to be deposed.

As this Court previously informed him by Electronic Order (Doc. #27), plaintiff may request a court-appointed attorney on the grounds that he is indigent, but there is no constitutional right to counsel in a civil case. Counsel in civil cases will only be appointed where the court determines that representation by an attorney is particularly appropriate or necessary. Furthermore, even "[i]f the court concludes that a claim has sufficient merit to justify imposing on an attorney to accept the case, a *pro se* litigant 'must [first] demonstrate that he has made attempts to obtain representation or legal assistance on his own, but was unsuccessful.'" Doc. #27 (Order, dated 12/30/2010) (quoting U.S. District Court, District of Connecticut, *Guide for Pro Se Litigants*, p. 15-16). Only then may a *pro se* litigant file a "Motion for Appointment of Counsel."

Plaintiff has never filed a motion for appointment of counsel in this case. He has also presented no evidence that he has ever sought to obtain legal representation on his own, but was unsuccessful. Under these circumstances, he must make himself available to be deposed regardless of the absence of an attorney to represent him.[19]

III.    **CONCLUSION**

The Court hereby grants defendant's motion to quash the subpoenas (Doc. # 28) for the depositions of three VA employees, scheduled for February 14, 2011, *nunc pro tunc*. These subpoenas were unduly burdensome in that they failed to provide defendant and its counsel

_____

[19]The Court further advises plaintiff that he must testify at a deposition at the defendant's request, regardless of his own assessment that he has previously made out his claim. Doc. #28, Ex.1, p. 1. Defendant's counsel has the right to inquire into the factual basis for that claim and thereby conduct discovery pursuant to Fed. R. Civ. P. 26(b)(1).

"reasonable notice" to make the witnesses available and prepare for three depositions. Moreover, upon learning of AUSA Nash's scheduling conflict on another legal matter, plaintiff refused to set an alternative date and instead insisted on this Court's resolution of the matter. I thus hereby quash the subpoenas retroactively and urge both parties to move forward in noticing future depositions in a cooperative spirit.

The Court also grants defendant's motion for protective order (Doc. # 28), thereby ordering, for good cause, that all depositions in this action be held at the United States Attorney's Office at 157 Church Street in New Haven, Connecticut. Analyses of cost, convenience, and litigation efficiency all favor this office as an appropriate setting for depositions to be taken by both parties. In addition to being a professional business office, with amenities and security, it is conveniently located next door to the United States Courthouse in which plaintiff filed this very action. The Court further finds that designating a location for all depositions will provide the parties with certainty and uniformity in planning their depositions. In sum, holding depositions at the USAO will promote efficiency in the discovery process.

Accordingly, defendant's Motion to Quash Subpoenas and Motion for Protective Order (Doc. #28) are hereby GRANTED.[20]

It is SO ORDERED.

Dated: New Haven, Connecticut
April 15, 2011

/s/Charles S. Haight, Jr.
Charles S. Haight, Jr.
Senior United States District Judge

---

[20]To the extent that certain pertinent events may have taken place between the time of the filing of the motion and this Ruling, the Ruling should be regarded as deciding questions of principle, with its effect and application being regarded as *nunc pro tunc.*