# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ROBERT L. BROCKWAY, JR.**,**

               Plaintiff,

  v.

VA CONNECTICUT HEALTHCARE
SYSTEM,

            Defendant.

3: 10 - CV - 719 (CSH)

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HAIGHT, Senior District Judge:

## I.     INTRODUCTION

Plaintiff  Robert L. Brockway, Jr. ("plaintiff"or "Brockway ), acting *pro se*,  brings this personal injury action against defendant Veterans Administration ("VA") Connecticut Healthcare System ("defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671, *et seq*.   Brockway's Complaint alleges that defendant wrongfully permitted an improper medical diagnosis of "Bi-Polar" to remain on his medical records. Doc. #1, p. 2 (C). Plaintiff further alleges that this "Bi-Polar" diagnosis was made "without proper medical authority," violated his right to privacy,  and resulted in his suffering "unne[ce]ssary  misery, stigma and shame." *Id.*, p. 2 (C), p. 3 (D).   Through this action, he seeks to recover $5 million in damages for "extreme harm to his professional career, family life, and reputation." *Id.*, p. 5 (F), p. 7 (sections 10 & 12b).

Pending before the Court is defendant's motion for summary judgment (Doc. #42), in which

1

defendant claims that, pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is warranted" in defendant's favor for the following reasons: (1) plaintiff's Complaint contains procedural deficiencies in that he fails to name the proper party as defendant, improperly requests a trial by jury, and seeks punitive damages; (2) plaintiff's claim, sounding in libel and/or slander, is barred under the libel and slander exception to the FTCA, 28 U.S.C. § 2680(h); (3) plaintiff's FTCA claim is untimely under the applicable two-year statute of limitations; (4) if construed as a claim for violation of privacy pursuant to the Privacy Act, 5 U.S.C. § 552a(g)(5), and/or breach of confidentiality of patient's records under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C.A. § 1320, *et seq.*, plaintiff claim is respectively untimely and/or outright barred by statutory provisions; and (5) plaintiff has failed to factually establish any violation of the FTCA by the defendant.

## II.   MATERIAL FACTS

### A.   Plaintiff's Background and Medical Treatment by VA Connecticut

The Court has derived the following material facts from the parties' submissions, which include, *inter alia*, defendant's Local Rule 56(a)(1) Statement, supporting affidavits, and plaintiff's deposition testimony.

Plaintiff is a veteran of the United States Air Force with several years of college education.[1] Doc. #42-4, Ex. C (Transcript Excerpts of Deposition of Robert L. Brockway, Jr. ("Brockway

---

[1]Brockway testified that from 1959 to 1963, he served in an administrative position of the Strategic Air Command of the United States Air Force while stationed in Spain. Doc. #42-4, p. 13, l. 14-25. Thereafter, he completed a bachelor's degree in Spanish and in 1970 obtained a master's degree in Psychology from Southern Connecticut State University. Later (no year or institution specified), he earned a Ph.D. in "public health." *Id.*, p.9, l. 5 to p. 11, l. 3.

Depo."), Mar. 22, 2011),  p. 8,  l. 6 to p. 11, l. 3.[2]   Upon leaving the military, he was employed

sporadically in a variety of positions, including school teacher, probation officer, and drug counselor,

while struggling with mental health difficulties.[3]  *Id.*, p11, l. 18 to p. 13, l. 13.   He is currently

unemployed and held his last position approximately five years ago, working at Walmart in the shoe

and furniture departments.  *Id.*, p. 11, l. 10-16.  Brockway first sought assistance from  the "mental

health system" approximately five years after he left military service.  *Id.*, p. 101, l. 12-19.  He

concedes that as early as 1970,  he realized he had been labeled as "mentally ill" by a mental health

facility at Yale.  *Id.*, p. 124, l. 6-14; p. 125, l. 6-20.

Plaintiff describes his feeling of being stigmatized by his mental illness as "internal" and

"subjective"– relating to how he feels about himself rather than resulting from any particular

statements or ill treatment directed toward him.  *Id.*, p. 130, l. 9 to p. 131, l. 25.  He further states that

he would find any diagnosis of mental illness to be stigmatizing, not just bipolar disorder.  *Id.*, p.

124, l. 3-5.

Plaintiff first sought treatment from the VA Connecticut Healthcare System for his mental

health in the late 1990's.  Doc. #42-4, Ex. B (Affidavit of Shuba H. Rodrigues, M.D. ("Rogrigues

Affidavit")), ¶ 3.   His primary clinician was Dr. Shuba H. Rodrigues, a  board-certified Doctor of

Psychiatry and staff physician with the VA Mental Health Clinic in West Haven, Connecticut.  *Id.,*

¶¶ 1-3.   Dr. Rodrigues both assessed and treated Brockway's mental health from March of 1999

---

[2]The Court herein cites to the page numbers specified at the upper right hand corner of the
deposition transcript, rather than to the page number of the docket entry.

[3]Brockway's longest held position, lasting five years, was probation officer in New
Hampshire.  Doc. #42-4, p. 13, l. 8-13.

until April of 2010.[4]  *Id.*, ¶ 3.

Upon initial examination of plaintiff on March 24, 1999, Rodrigues noted that he had "an existing diagnosis of hypertension and Bipolar Disorder."[5]  *Id.*, ¶ 4.  She also noted that he had been hospitalized in 1980 for a psychiatric condition, during which time he initially began taking the drug lithium.  *Id.*  Rodrigues assessed plaintiff's condition as "BiPolar Disorder" with possible psychotic features and "Tardive Dyskensia" and "continued [him] on his medication."  *Id.*  Thereafter, she saw Brockway at the VA every three months to assess and treat his mental health issues and manage his medication.  *Id.*, ¶ 5.  At each session, she took detailed notes of his condition and treatment.  *Id.,* ¶¶ 6-11.

On numerous occasions, Rodrigues noted that plaintiff repeatedly voiced his concerns regarding stigmatization due to his mental illness.  *Id.*, ¶ 5  (*e.g.*, April 19, 2000 progress notes – Brockway "tends to always  bring up the same issue – . . . the stigma of mental illness;" December 13, 2000 progress notes –  issue of stigma "comes up on every visit").   Rodrigues recalls that plaintiff also discussed his "disagreement with the use [of] certain psychiatric terminology."  *Id.*, ¶ 7 (referencing progress notes on February 5, 2003).  On May 8, 2003,  Rodrigues's notes for Brockway's  session stated that Brockway reported that he had seen "bipolar disorder" on his paper chart in the New London VA clinic and was "angry" about the use of such terminology and the fact

---

[4]Rodrigues was certified by the American Board of Psychiatry and Neurology in 1989 and became licensed to practice medicine in the State of Connecticut in 1994.   Doc. #42-4, Rodrigues Affidavit,  ¶ 1.  She has been employed as a staff physician at the VA Connecticut Healthcare System since 1998.  *Id.*, ¶ 2.

[5]Plaintiff asserts that a "physician assistant at the VA" named Mary Ann Chomiak  "made the first diagnosis of Bi[p]olar at the VA" on 10/21/1998.  *See* Doc. #43-1, p. 11, ¶ 1, & p. 13 (progress notes dated "10/21/1998" and signed by "Mary Ann Chomiak").

that it appeared on documents that "non-professionals use." *Id.*, ¶ 8. Similarly, on March 17, 2004, Rodrigues indicated that Brockway "talked at length about seeing a diagnosis of 'Bipolar Disorder' when clerks access[ed] his record" and felt strongly that non-medical personnel should not have access to such information.[6] *Id.*, ¶ 9. Rodrigues noted that plaintiff based his disapproval of such access on his negative experiences with the stigma of mental illness. *Id.*

Rodrigues treated Brockway until April 21, 2010, when he chose to discontinue treatment. *Id.*, ¶ 11. On or about January 19, 2010, approximately two months prior to terminating his treatment at the VA, Brockway filed an administrative tort claim with the Department of Veterans Affairs. Doc. #1 (Complaint), p. 7. "On May 7, 2010, the Department of Veterans Affairs issued a final determination denying [plaintiff's] claim." Doc. #23, p. 3, ¶ 3. On May 11, 2010, plaintiff filed the present action before this court. Doc. #1.

In this action, Brockway claims that he has "suffered from exposure," which he confirmed was exposure from "other people at the VA who might have seen [his] medical records." Doc. #42-4 (Brockway Depo.), p. 62, l. 17-24. In particular, he claims that approximately five or six years ago, he was called at home by a non-VA doctor, whom he identified as "Dr. Carlson," asking if Brockway would like to receive psychotherapy from him. *Id.*, p. 54, l. 10-24, p. 101, l. 12-19, p. 75, l.12 to p. 76, l.6. Plaintiff does not know how this doctor obtained his name but believes that the doctor accessed his VA treatment record. *Id.* Brockway bases this belief on a conversation he had with Dr. Rodrigues in which she stated that Dr. Carlson had been a VA staff member at one time. *Id.*, p.54,

---

[6]Brockway does not deny the contents of Rodrigues's March 17, 2004 report. Doc. #42-4 (Brockway Depo.), p. 135, l. 18 to p. 136, l. 23. He explained that he assumed he had been diagnosed with bipolar disorder because he had been prescribed and was taking lithium. *Id.*, p. 136, l. 11-14.

l. 10-20; p. 75, l.12 to p. 76, l.2.   Brockway further asserts that Rodrigues told him that she did not

provide Dr. Carlson with any reference to Brockway, but that Dr. Carlson visits the VA clinic

routinely to determine if anyone needs his services.   *Id*. Plaintiff has concluded that Dr. Carlson, as

a former VA employee, may have gained unauthorized access to his medical records.   Doc. #43-1,

 p. 4.  Plaintiff concedes that, aside from Dr. Carlson, he does not know of anyone other than VA

employees who might have looked at his VA medical records.   Doc. #42-4 (Brockway Depo.), p. 76,

l. 23 to p. 77, l. 4.

     In his Complaint, plaintiff prays for $5 million in damages for pain and suffering resulting

from the VA's negligence in recording the diagnosis of bipolar disorder in his VA medical records

and allowing VA employees  and possibly others to view that diagnosis.   *Id.*, p. 77, l. 22 to p. 80, l.

17; p. 95, l. 21 to p. 96, l. 7.

     **B.**    **Policies of the VA Connecticut**

        **1.**    **Confidentiality of Medical Records**

     The VA Connecticut is required to follow the guidelines set forth in the Veterans Health

Administration ("VHA") Handbook  with respect to protection of patients' medical records.   Doc.

#42-3, Ex. A (Affidavit of Robert Nall ("Nall Affidavit")), ¶ 4.[7]  The VHA Handbook directs  local

VA Healthcare Systems, such as that located in Connecticut, to establish safeguards concerning

confidentiality of patient records.   *Id.*, ¶ 5.   Pursuant to those guidelines, all staff with access to

patient information in the performance of their duties must be made aware of their responsibility to

---

[7]Robert Nall asserted by affidavit that he is  "employed by the VA Connecticut
Healthcare System as the Assistant Chief of the Health Information Management Service
(HIMS)."  Doc. #42-3, ¶ 1.  He has held that position since October 10, 2010.  *Id.*

maintain confidentiality of patient information.  *Id.*

Under the VA Handbook, "[t]he privacy of patient information must be preserved and the information will not be accessible to, or discussed with, unauthorized persons." *Id.*, ¶ 6.  Moreover, "[e]very employee with access to patient records in any medium is responsible for the proper handling of the patient records" and "is accountable for safeguarding patient confidentiality and privacy." *Id.*   Failure to comply with said responsibilities "may result in disciplinary or other adverse action up to, and including, termination." *Id.*

The Handbook further mandates that "[a]ccess to health records and health record file areas is limited to authorized personnel." *Id.*, ¶ 7.  Specifically, only authorized users, those with a "need to know," may access patient information. *Id.*, ¶ 9.  "Need to know" is defined as "access to health information by authorized clinical or administrative users based on the user's role and a specific reason the information is needed to perform the user's job function." *Id.*

According to the sworn statement of Robert Nall, Assistant Chief of Health Information Management Services ("HIMS"), the VA Connecticut Healthcare System complies with the VHA Handbook and other applicable VA policy to ensure that patient records are kept confidential and secure. *Id.*, ¶ 10.  Privacy of patient information is preserved, such that information is neither accessible to nor discussed with unauthorized persons. *Id.*  Moreover, authorized personnel are provided with training regarding their responsibility for proper handling of patient records and the safeguarding of patient confidentiality and privacy. *Id.*, ¶ 10.

Nall avers that the VA Connecticut Healthcare System HIMS is not aware of any occasion when the confidentiality or security of plaintiff's patient records was  compromised, nor any occasion when unauthorized persons had access to his patient records or discussed such records

and/or treatment with unauthorized persons.   *Id.*, ¶ 11.

Dr. Rodrigues confirmed that she herself consistently safeguarded Brockway's medical records to protect his confidentiality and privacy.  Doc. #42-4 (Rodrigues Affidavit), ¶ 14.  She claims that she never allowed unauthorized persons to have access to those records, nor did she discuss plaintiff's records or treatment with unauthorized persons.  *Id.*

## 2.    <u>Progress Notes  re: Treatment</u>

The VHA Handbook provides guidelines as to the creation and contents of progress notes on treatment sessions.  Doc. #42-3 (Nall Affidavit), ¶ 12.  In particular, items that  must be recorded include, *inter alia*: the patient's "chief complaint and/or reason for visit;" clinical impression or diagnosis; plan for care; identity of treating health care professional; and identification of risk factors. *Id.*  Moreover, progress notes must include "document observations, progress, response to and changes in treatment, subsequent assessments of the patient's response to care, other intervention, planned follow-up care, instructions, diagnosis, and pertinent findings from ancillary tests." *Id.*

## III.    <u>JURISDICTION & VENUE</u>

Plaintiff's action arises under the Federal Torts Claims Act, which vests exclusive jurisdiction over such claims in the district courts, as follows:

> [T]he district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

8

claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346 (b)(1). *See also* 28 U.S.C. § 2671.[8]   Accordingly, pursuant to 28 U.S.C. § 1346(b)(1), this Court has subject matter jurisdiction over plaintiff's claim.

Venue is proper in the District of Connecticut pursuant to 28 U.S.C.A. § 1402(b), which provides that "[a]ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." Plaintiff brings this action against defendant pursuant to 28 U.S.C. § 1346(b)(1) so venue in Connecticut is proper because plaintiff resides within the state and all of "the act[s] or omission[s] complained of" occurred in Connecticut.[9] *See* Doc. #1 (Complaint), p. 1 (stating plaintiff's residence as "28 Boston Terrace, Guilford, Connecticut 06437" and location of plaintiff's treatment, the VA Connecticut Healthcare, as "960 Campbell Avenue, West Haven, Connecticut 06516").

---

[8]As used in section 1346(b), "'[e]mployee of the government' includes (1) officers or employees of any federal agency, . . . and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. For purposes of the Federal Torts Claims Act, employees of the VA Connecticut Healthcare System are encompassed as "employees" of the Government, for whose tortious acts plaintiff may seek recovery.

[9]Had the plaintiff named individual employees of the Government as defendants in this action, venue would still be proper in Connecticut pursuant to 28 U.S.C. § 1391 (allowing civil action "not founded solely on diversity of citizenship" to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred") or under 28 U.S.C. § 1391(e)(1) (providing that a "civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may . . . be brought" in "any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim occurred" or "the plaintiff resides if no real property is involved in the action").

IV.     **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174 (2d Cir. 2012) ; *accord Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A material fact is one that might 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact-finder] could return a verdict for the nonmoving party.'" *Madison Nat. Life Ins. Co., Inc. v. Travelers Prop. Cas. Co. of America*, No. 11–1438–cv, 2012 WL 516835, at *1 (2d Cir. Feb. 17, 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Second Circuit has mandated that, "[i]n determining whether there are genuine issues of material fact, [the court is] 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Jenkins v. NYS Banking Dep't*, 458 F. App'x 36, 37 (2d Cir. 2012)(quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003)). Thus, summary judgment is appropriate only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Jenkins*, 458 F. App'x at 37 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).[10]

The party who seeks summary judgment bears the burden of showing that he or she is entitled

_____

[10]*See also Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006) (summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that "the moving party is entitled to judgment as a matter of law") (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)); *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

to a summary disposition.  *Anderson*, 477 U.S. at 256; *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The moving party has the burden to establish that there exists no genuine issue of material fact warranting a trial.  *Ford v. Reynolds*, 316 F.3d F.3d 351, 354 (2d Cir. 2003); *Huminski v. Corsones*,  396 F.3d 53, 69 (2d Cir. 2005).  The moving party may meet this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo., Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

 Once the moving party has met this burden, the opposing party must present sufficient evidence to show that a fact-finder could reasonably find genuine issues of fact.  *Anderson*, 477 U.S. at 255.  Specifically, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Id.; see also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87); *see also R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (nonmoving party must set forth "concrete particulars" showing that a trial is needed).

 Moreover, the party who opposes summary judgment "may not rely on mere allegations or denials, but rather must 'cit[e] to particular parts of materials in the record' to demonstrate that a fact is genuinely disputed."  *Eaddy v. City of Bridgeport*, No. 09CV1836 (MRK), 2011WL 1399031, at *3 (D. Conn. April 12, 2011) (quoting Fed. R. Civ. P. 56(c)(1)).    There must be more than a "scintilla of evidence" in the non-movant's favor.  *Anderson*, 477 U.S. at 252.  "[C]onclusory allegations," "bald assertions," and "metaphysical doubt"  will not suffice.  *See, e.g., BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996)  (it is insufficient for a party opposing summary judgment "merely to assert a conclusion  without supplying supporting arguments

or facts").[11]

V.    **DISCUSSION**

At the outset, the Court notes that plaintiff has brought this action *pro se* and is thus entitled to have his submissions construed liberally and to be treated, in general,  with the proper leniency afforded *pro se* status.  *See, e.g.*, *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed . . . [and] must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotations and citation omitted).  *See also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants.").  Turning to defendant's arguments for summary judgment, the Court shall address each one in turn.

A.    **Alleged "Procedural Deficiencies" in Plaintiff's Complaint**

Defendant initially argues that plaintiff's Complaint is "deficient in terms of the identity of the defendant and the claims for relief."  Doc. #42-1, p. 6.  First, defendant asserts that plaintiff has named the VA Connecticut Healthcare System as the sole defendant in the case and "only the United States is the proper party defendant under the FTCA."  *Id*.  In support of its argument, defendant cites 28 U.S.C. § 2679(a), captioned, "Exclusiveness of Remedy."   That section provides as follows:

> The authority of any federal agency to sue and be sued in its own name shall not be
> construed  to  authorize  suits  against  such  federal  agency  on  claims  which  are

_____

[11]*See also Heublein, Inc. v. United States.* , 996 F.2d 1455, 1461 (2d Cir. 1983) ("Genuine issues of fact are not created by conclusory allegations."); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ("defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden" to overcome properly supported summary judgment motion)*; see also Matsushita Elec.*, 475 U.S. at 586 (to avoid summary judgment, a party "must do more than simply show that there is some metaphysical doubt as to the material facts").

cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a). *See also Shivcharan v. United States*, No. 04CV12996 (SJ), 2005 WL 408046, at *1 (E.D.N.Y. Feb. 15, 2005) ("[u]nder the FTCA, 'only the United States may be held liable for torts committed by a federal agency, and not the agency itself'") (quoting *C.P. Chemical Co., Inc. v. United States*, 810 F.2d 34, 37 n. 1 (2d Cir.1987) and citing 28 U.S.C. § 2679(a)); *Southeast Grand Street Guild Housing Devel. Fund Co., Inc. v. U.S. Dept. of Housing and Urban Devel.*, No. 91 CIV. 8358 (TPG), 1992 WL 73419, *7 (S.D.N.Y. Mar. 31, 1992) ("Individual agencies may not be sued directly on tort claims cognizable under the statute[,] 28 U.S.C. § 2679(a)" and "[t]hus, on the tort claims asserted in the present action, the United States rather than [the agency] would be the proper defendant.").

Next, defendant points out that the plaintiff has requested a jury trial and the FTCA does not permit a trial by jury. Doc. #42-1, p. 6. *See* 28 U.S.C. § 2402 (absent limited exception, "any action against the United States under section 1346 shall be tried by the court without a jury").

Lastly, defendant states that plaintiff seeks "$5 million . . . for pain and suffering" but he is "not entitled to punitive damages against the government." Doc. #42-1, p. 6. *See* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.").

Assuming without deciding that each of defendant's assertions with respect to defects in the Complaint has merit, the Court refrains from dismissing the action on those asserted bases at this time. Rather, the Court reviews the plaintiff's *pro se* Complaint with the necessary liberality and

finds that each proffered defect may potentially be remedied.  First, the United States Attorney's Office, recognizing that plaintiff has mistakenly named an agency rather than the Government itself as defendant, has entered an appearance and defended this action, essentially stepping in to defend the Government in the action.  If, as the Government argues, the United States is indeed the correct defendant with respect to plaintiff's FTCA claim, the Government may move the Court to substitute the United States for defendant VA Connecticut Healthcare System.  *See, e.g.*, *Aldridge v. Hartford Hosp.*, 969 F. Supp. 816, 821 (D.Conn. 1996)(for purposes of FTCA claim, where United States Navy physician "was acting within the scope of his federal employment at the time of the alleged negligence . . . the United States Government must be substituted as the proper party."); *Northrop v. United States*, No. 3:07-CV-20 (JCH), 2008 WL 4447101, at *3-5 (D. Conn. Aug. 28, 2008) (granting motion to substitute United States "for defendant [AUSA] Jongbloed with respect to plaintiff's FTCA claims").  A necessity to substitute the correctly named defendant would thus not, in and of itself, provide grounds for dismissal of the action.

Second, as to plaintiff's request for trial by jury, such a request could easily be withdrawn by plaintiff or stricken by the Court, thereby affording plaintiff a bench trial.  *See, e.g., Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co.*, No. 3:11–CV–282 (JCH), 2012 WL 162361, at *5-7 (D. Conn. Jan. 19, 2012) (striking plaintiff's claim to jury trial because no right to a jury exists under applicable federal statute (ERISA)).

Third, plaintiff's alleged damages are neither  labeled as  "punitive," nor likely to be comprised solely of damages which are punitive in nature.  Rather, such damages likely include monetary/compensatory damages for losses, such as lost income or wages and costs for  medication

and/or treatment.[12]   At this stage of the proceedings, plaintiff has broadly alleged harm to his professional career, family life, and reputation.  He has not defined the exact amounts and nature of his damages and may thus be left to his proof.

In sum, the Court finds that any or all of the denoted defects may be corrected by amendment to the plaintiff's Complaint, either by substituting or striking the relevant provisions.  Therefore, and in light of  plaintiff's *pro se* status, the Court finds none of the alleged deficiencies sufficient to warrant dismissal of the action at this time.  Because these errors do not, by themselves, render plaintiff's claims fatally defective, the Court will address defendant's remaining arguments for dismissal.

### B.   FTCA Claim

#### 1.   Plaintiff's Claim, Sounding in Libel and/or Slander, is Barred under the Libel and Slander Exception to the FTCA, 28 U.S.C. § 2680(h)

Defendant next argues that plaintiff's allegations sound in "libel" and "slander" and thus his action is  barred under the libel and slander exception to the FTCA.  Doc. #42-1, p. 7.  In particular, defendant states that plaintiff's claim that the VA "allowed a diagnosis of mental illness to remain on his medical records without proper medical authority" and that "the privacy of his records was not maintained" actually sound in "libel" and "slander."  *Id*.  Defendant points out that claims for libel and slander do not fall within the FTCA's waiver of sovereign immunity and are thus not within the Court's jurisdiction.  *Id.   See*  28 U.S.C. § 2680(h) (stating that provisions of section 1346(b)

---

[12]For example, plaintiff claims that he has suffered "economic damages" due to medications he was prescribed for bipolar disorder ("dopaminergic antagonist medications"), which he asserts caused him to suffer "Tardive Dyskinesia," an affliction characterized by "involuntary movements of the tongue, lips, face, trunk and extremities." Doc. #43-1, p.3, p. 33-34.

"shall not apply to – . . . [a]ny claim arising out of . . . libel [or] slander"). *See also Talbert v. United States,* 932 F.2d 1064, 1066-67 (4th Cir. 1991) (employee's claim that employer breached duty to use reasonable care in maintaining accuracy of personnel records fell within libel and slander exception to FTCA and was thus barred)*; Baker v. United States,* 943 F. Supp. 270, 275 (W.D.N.Y. 1996) (plaintiff counselor's claim that co-employees at veterans hospital intentionally altered his personnel and medical records to falsify them and then disclosed said inaccurate information to third parties "is essentially a defamation claim and, as such, is barred under the libel and slander exception to the FTCA").

Focusing on the allegations in the Complaint, plaintiff asserts that defendant wrongfully disclosed what he considered inaccurate medical information, namely his diagnosis as "bipolar disorder," to third parties, resulting in damage to his "professional career, family life, and reputation." *See* Doc. #1, p. 3, p. 7 (alleging "diagnosis without proper medical authority" and "[i]mproper diagnosis of mental illness" and "violation of right to privacy" in disclosing such diagnosis to third parties).

To determine whether plaintiff's claim falls within the "libel" and "slander" exception to the FTCA, as set forth in 28 U.S.C. § 2680(h), the Court must "turn to the 'traditional and commonly understood definition of the tort'" in question, consulting such appropriate sources as the Restatement (Second) of Torts and federal case law construing the exception. *See, e.g., Talbert ,* 932 F.2d at 1066 (citing *Jimenez-Nieves v. United States,* 682 F.2d 1, 3-4 (1st Cir.1982) and quoting *United States v. Neustadt,* 366 U.S. 696, 706 (1961)).

According to the Restatement (Second) of Torts § 558 (1977), liability for the tort of "defamation" – which includes libel and slander – exists if there is "(a) a false and defamatory

16

statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

In the case at bar, plaintiff claims that a false and improper diagnosis of "bipolar disorder" was wrongfully published to unauthorized persons by the VA Connecticut Healthcare System, thereby causing him injury to his career, personal life, and reputation.  Doc. #1, p. 7.  Because plaintiff's  alleged damages stem from disclosure of his medical records which damaged his reputation, the crux of his claim is defendant's communication of what he considers false information about him.  As such, his claim "resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly." *See Talbert*, 932 F.2d at 1066-67 (quoting *Jimenez-Nieves*, 682 F.2d at 6); *accord* Baker, 943 F. Supp. at 275.[13]   Accordingly, viewing plaintiff's action as either one for  libel or slander, that action is barred under § 2680(h) of the FTCA.

### 2.    Plaintiff's FTCA Claim is Untimely under 28 U.S.C. § 2401(b) and thus Jurisdictionally Barred

Even if plaintiff's complaint is construed to allege other torts outside of  "libel" and

---

[13]Following  *Talbert*, the court in *Baker* stated as follows:

Here, the gravamen of plaintiff's complaint is that defendant disclosed inaccurate information to third parties. The damages plaintiff seeks appear to result directly from communication of this allegedly false information and not from defendant's mere maintenance of inaccurate information.

Therefore, I find that plaintiff's claim is essentially a defamation claim and, as such, is barred under the libel and slander exception to the FTCA.

943 F. Supp. at 275.

"slander," such as medical malpractice, defendant correctly asserts that plaintiff's claims are nonetheless barred by the FTCA's two-year limit for filing an administrative action prior to bringing a civil action. Doc. #42-1, p. 9-11.  Specifically, the FTCA bars any claim in a federal court "unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing."[14] *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715,  719-20 (2d Cir. 1998).  *See* 28 U.S.C. § 2401(b) ("a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues");  *Hill v. United States*, No. 3:09cv1692 (JBA), 2010 WL 4365572, at *4 (D.Conn. Oct. 22, 2010).

Furthermore, an FTCA claim is barred if not brought within six months of its final denial by the appropriate agency.  *See* 28 U.S.C. § 2401(b) (FTCA claim must be brought in court "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented").  Because the FTCA is jurisdictional, both of these conditions "must be satisfied for a court to exercise jurisdiction."  *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir.2004).  *See also Accolla v. U.S. Government*, 381 F. App'x 71, 73 (2d Cir. 2010) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived.") (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir.2005));

---

[14]*See also* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency* and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.") (emphasis added).

*accord  Flory v. United States*, 138 F.3d 157, 159  (5th Cir.1998) ("It is well-settled that these limitation periods [for asserting tort claims against the United States] are jurisdictional.").

Thus, the FTCA statute of limitations requires that plaintiff meet two time restrictions: (1) file his claim in writing with the appropriate agency within two years after the claim accrues; and (2) file his action in court within six months after the date the administrative agency mailed its notice of final denial of his claim.  *Willis v. United States*, 719 F.2d 608, 601 (2d Cir.1983) ("Were we to read the "or" in the [FTCA statute of limitations] section as really intending the disjunctive, a claimant who filed a claim with the agency within two years would then be able to bring it to a District Court at any remote future time after the agency denied him relief.").  *See also  Goldblatt v. National Credit Union Admin.*, No. 3:11CV334 (WWE), 2011 WL 4101470, at *3 (D. Conn. Sept. 14, 2011) ("The Second Circuit has interpreted Section 2401(b) as imposing two separate time restrictions on claims, both of which must be complied with by potential FTCA plaintiffs.") (citing *Willis v. United States*, 719 F.2d 608 (2d Cir.1983)). [15]

Pursuant to federal law, "[c]laims under the FTCA accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir.1999) (citing

---

[15]As the Second Circuit explained in *Adeleke v. United States*:

The FTCA waives sovereign immunity for "claims against the United States, for money damages ... for ... loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." [28 U.S.C.] § 1346(b). This waiver, however, operates subject to numerous conditions, each of which must be satisfied for a court to exercise jurisdiction.

355 F.3d 144, 153 (citing *Millares Guiraldes de Tine*, 137 F.3d at 719).

*United States v. Kubrick*, 444 U.S. 111, 118-22  (1979)).  *See also Davis v. United States,* 430 F.

Supp. 2d 67, 73 (D. Conn. 2006)

      "Ordinarily, a plaintiff's FTCA claim accrues at the time of injury."*Kronisch v. United States*,

150 F.3d 112, 121 (2d Cir. 1998) (citing *Barrett v. United States*, 689 F.2d 324, 327 (2d Cir.1982)).

Accrual may be postponed where plaintiff "would reasonably have had difficulty discerning the fact

or cause of injury at the time it was inflicted," to the time when "plaintiff has or with reasonable

diligence should have discovered the critical facts of both his injury and its cause." *Kronisch*, 150

F.3d at 121.  In such circumstances, "[d]iscovery of the 'critical facts' of injury and causation is not

an exacting requirement, but requires only knowledge of, or knowledge that could lead to, the basic

facts of the injury, *i.e.*, knowledge of the injury's existence and knowledge of its cause or of the

person or entity that inflicted it."  *Id.*  In other words, "a  plaintiff need not know each and every

relevant fact of his injury or even that the injury implicates a cognizable legal claim." *Id.* (quoting

*Barrett*, 689 F.2d at 327).   "Rather, a claim will accrue when the plaintiff knows, or should know,

enough of the critical facts of injury and causation to protect himself by seeking legal advice."

*Kronisch*, 150 F.3d at 121  (citing *Guccione v. United States*, 670 F. Supp. 527, 536 (S.D.N.Y.1987),

*aff'd on other grounds*, 847 F.2d 1031 (2d Cir.1988), *cert. denied*, 493 U.S. 1020 (1990)).

      Although "[a] claim does not accrue when a person has a mere hunch, hint, suspicion, or

rumor of a claim," *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C.Cir.1984), *cert. denied*, 470 U.S. 1084,

(1985), "such suspicions do give rise to a duty to inquire into the possible existence of a claim in the

exercise of due diligence," *id.* at 35 & n. 107.  *See Kronisch*, 150 F.3d at 121.

      In the case at bar, plaintiff failed to comply with the first jurisdictional prerequisite of the

FTCA – *i.e.*, timely exhaustion of his administrative remedies – in that he failed to file his action

with the applicable agency within two years after his claim accrued.[16]  Specifically,  plaintiff filed

his administrative claim on January 19, 2010 even though he was aware of the "bipolar disorder"

diagnosis giving rise to his FTCA claim as early as May of 2003.  According to Dr. Rodrigues,

plaintiff knew that the diagnosis of "Bipolar Disorder," which he considered incorrect, appeared in

his VA medical records and that such medical records were viewed by "non-professional" VA clerks

as early as May 8, 2003.  Doc. #42-4 (Rodrigues Affidavit), ¶ 8 (describing progress notes of

Rodrigues regarding May 8, 2003 session with plaintiff: "Seen today for psychiatric followup" and

"saw 'bipolar disorder' on his paper chart" and "was angry about this – says he  does  not  agree  to

use of such terminology, and feels it [should]  not  be  on  papers  that  non [-]professionals use").[17]

    Plaintiff himself entered a copy of the May 8, 2003 progress notes into the record as an

exhibit to his opposition to defendant's motion to dismiss.  *See* Doc. #431, p. 44.  In so doing, he

failed to  refute or contest the contents of those notes.

    Furthermore, although plaintiff has admitted that he does not  recall the particulars of all

discussions with Dr. Rodrigues at each therapy session, when deposed with respect to Rodrigues's

contemporaneous progress notes, for example of March 17, 2004, plaintiff did not dispute the dates,

contents, or accuracy thereof.  Instead plaintiff stated  that, even if he could not recall the particular

contents of the report, he "was not going to deny it."  Doc. #42-4 (Brockway Depo.), p. 135, l. 18

---

[16]Plaintiff filed the present action on May 11, 2010, within the prescribed six-month
period following final denial of his claim by the Department of Veterans Affairs on May 7, 2010.
Doc. #23, p. 3, ¶ 3.   Nonetheless, where both timeliness requirements of 28 U.S.C. § 2401(b)
are jurisdictional, plaintiff's FTCA claim  remains barred.

[17]*See also* Doc. #42-4 (Rodrigues Affidavit), ¶ 9  (progress notes for treatment visit on
March 17, 2004, stating that plaintiff "talked at length abut seeing a diagnosis of 'Bipolar
disorder' when clerks access his record – feels strongly about non[-]medical personnel having
access to such info").

to p. 136, l. 25 (testimony re: March 17, 2004 progress report in which Rodrigues asserted that plaintiff saw his diagnosis of bipolar disorder "when the clerk accessed [his] record").

In sum,  Rodrigues's progress notes show that in 2003 and later in 2004, plaintiff was aware that his VA medical records contained a diagnosis of "bipolar disorder" and that he was concerned about the use of such terminology and the access that clerks had  to his medical records.  *Id.*, p. 135, l. 18 top. 136, l. 24 (plaintiff's testimony re: March 17, 2004 progress report stating that plaintiff assumed he had been diagnosed with "bipolar disorder" at that time because he was "taking lithium").

 To refute the notion that his claim is time-barred, plaintiff states, "It is disputed whether [Brockway] had access to his VA medical records prior to his visit with Dr. John Garvey on January 4, 2010; whereby [he] discovered with reasonable diligence the critical material facts of both his injury and its cause on that date."[18]  Doc. #43-1, p. 5.  Plaintiff also refers the Court to Exhibit E of his memorandum in opposition to summary judgment, a progress report by Dr. Rodrigues regarding her April 21, 2010 session with Brockway, in which she wrote, "I was surprised when I was informed of  [Brockway's claim against the VA] by the hospital attorney earlier this week."  Doc. #43-1, p. 52.

The Court finds neither argument persuasive.  First, the record reflects that although Brockway may not have possessed copies of his medical records during his treatment, he was aware

_____

[18]VA progress notes submitted to the Court by plaintiff indicate that John B. Garvey was the "Primary Provider" physician for Brockway since at least 2005.  *See* Doc. #43-1, p. 38, 40-42 (VA progress notes dated 3/19/2009, 2/21/2008, 1/11/2006, and 7/12/2005, respectively).   In a letter from Brockway to Linda J. Mead, Regional Counsel, Department of Veterans Affairs, dated February 17, 2010, plaintiff alleged that "January 4, 2010 is the accident date or when this diagnosis [of bipolar disorder] was discovered while visiting one John B. Garvey, M.D., at the VA Primary Care Clinic, 4 Shaw's Cove, New London, CT."  Doc. #1, p. 11.

of his diagnosis of "bipolar disorder" as early as May 8, 2003.    As described *supra*, Brockway

himself submitted a copy of the progress notes by Rodrigues of that date, in which she stated that

plaintiff "saw bipolar disorder on his paper chart . . . and was angry about this" and "fe[lt] it should

not be on papers that non[-]professionals use."  Doc. #43-1 (Attachment D), p. 44.   In submitting

that report, plaintiff did not disclaim its contents or argue against their accuracy.   Furthermore,

plaintiff offered no evidence with respect any particular revelations at his January 2010 meeting with

Dr. Garvey.  Such a meeting, occurring as late at January of 2010,  would have, at most, served to

confirm Brockway's prior discovery that "bipolar disorder" was written in his VA records.

Second, the Court finds no significance in  Rodrigues's  expression of surprise in April 2010

regarding  Brockway's filing of his administrative claim on January 19, 2010.  *See* Doc. #43-1, p.

53 (progress notes of 4/21/2010, signed by "Shuba Rodrigues, MD" on "/4/23/2010").   In fact, the

contents of Rodrigues's April 2010  progress notes serve only to bolster the conclusion that

Brockway's claim stemmed from information that he possessed for years by that point.  In particular,

"[h]e spent [the] rest of [the] visit explaining his reason for going forth with [his claim]" – "[h]is

anger about how his diagnosis ha[d] affected his life" and the belief that "there was 'no medical

authority' in the making of the diagnosis."  *Id.*

In sum, because plaintiff knew of and contested the accuracy of his diagnosis of bipolar

disorder since at least May 2003, it was incumbent on him to submit his administrative claim of

improper diagnosis to the VA within two years of that date.   Here, the record clearly demonstrates

that plaintiff was aware of the facts giving rise to his FTCA claim as early as his May 8, 2003

therapy session, or at the latest his March 17, 2004 session.[19]   He thus had two years – until May 2005 or March 2006, respectively  – to submit his administrative claim.  He did not, however, file his administrative tort claim with the VA until January 19, 2010 – well outside the two-year statutory period.[20]  Doc. #1, p. 7 (Claim for Damage, Injury, or Death, submitted to VA's Office or Regional Counsel, 555 Willard Avenue, Newington, CT 06111, signed by plaintiff and dated "1/19/2010").  Accordingly,  if plaintiff's complaint is construed as stating an FTCA claim, such as medical malpractice, that claim is barred as untimely.[21]  *See  Accolla v. U.S. Government*, 381 F. App'x 71, 73 (2d Cir. 2010) (FTCA "provides that "a tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b));  *Mathirampuzha v. Potter*, 548 F.3d 70, 84 & n.15 (2d Cir. 2008) ("The statute of limitations under the FTCA is two years.") (citing 28 U.S.C. § 2401(b)).

---

[19]On March 17, 2004, Rodrigues indicated in her progress notes that Brockway "talked at length about seeing a diagnosis of 'Bipolar Disorder' when clerks access[ed] his record" and felt strongly that non-medical personnel should not have access to such information.  Doc. #42-4 (Rodrigues Affidavit), ¶ 9.

[20]Even were one to extend the date by which plaintiff knew or should have known of the facts of his FTCA claim to "five or six years" before his deposition on March 22, 2011 – *i.e.*, the time frame in which he allegedly received a phone call at home from a "Dr. Carlson," asking him if he would like to receive psychotherapy –  plaintiff would still have had to file his FTCA claim by 2008 at the latest.  Doc. #42-4 (Brockway Depo.),  p. 54, l. 10-24, p. 101, l. 12-19, p. 75, l.12 to p. 76, l.6; p. 76, l. 23 to p. 77, l. 4.  His January 19, 2010 administrative claim would still be untimely.

[21]Any medical malpractice claim with respect to Dr. Rodrigues might be undermined by Brockway's statement in a letter to the VA in January 2010 that he intended to ask Rodrigues to be an expert witness on his behalf with respect to his administrative claim. Doc. #43-1, p. 52 (Rodrigues progress notes dated 4/23/2010).

C.      **Privacy Act Claim**

Plaintiff has explicitly named the FTCA as the basis for his claim, invoking the Court's

jurisdiction under 28 U.S.C. § 1346(b) and 28 U.S.C.A. § 2675(a).   *See*   Doc. #1, p. 2

("Jurisdiction").   For the reasons set forth *supra*, if brought solely pursuant to the FTCA, that claim

is either barred under the libel and slander exception to the FTCA , 28 U.S.C. § 2680(h), or time-

barred by the applicable statute of limitations, 28 U.S.C. § 2401(b).  However, if the Court construes

plaintiff's claim as one arising under the Privacy Act, his claim is still untimely.

Plaintiff may wish to assert that he brings his claim pursuant to the Privacy Act, 5  U.S.C.

§ 552a, *et seq.*[22]  That statute, regarding "[r]ecords maintained on individuals" by agencies,  provides

in relevant part:

> (b) Conditions of disclosure. – No agency shall disclose any record which is
> contained in a system of records by any means of communication to any person, or
> to another agency, except pursuant to a written request by, or with the prior written
> consent of, the individual to whom the record pertains, unless disclosure of the record
> would be –
>
>> (1) to those officers and employees of the agency which maintains the
>> record who have a need for the record in the performance of their
>> duties . . . .
>
> (g)(1) Civil remedies.– Whenever any agency
>       . . .
>
>> (C) fails to maintain any record concerning any individual with such
>> accuracy, relevance, timeliness, and completeness as is necessary to
>> assure fairness in any determination relating to the qualifications,
>> character, rights, or opportunities of, or benefits to the individual that

---

[22]As stated *supra*, the Court must construe a *pro se* complaint liberally, *Harris v. Mills*,
572 F.3d 66, 71-72 (2d Cir.2009), read such a complaint  with "special solicitude," and interpret
it to raise the "strongest [claims] that [it] suggest[s]." *Triestman v. Federal Bureau of Prisons*,
470 F.3d 471, 474-75 (2d Cir.2006) (*per curiam*).  In this case, the Court therefore construes
plaintiff's claim as alternatively stating a statutory action for violation of privacy.

> may be made on the basis of such record, and consequently a
> determination is made which is adverse to the individual; or
>
> (D) fails to comply with any other provision of this section, or any
> rule promulgated thereunder, in such a way as to have an adverse
> effect on an individual,

the individual may bring a civil action against the agency, and the district courts of
the United States shall have jurisdiction in the matters under the provisions of this
subsection.

5 U.S.C.A. § 552a (b)(1), (g)(1)(C)-(D).

Any action under the Privacy Act must be brought "within two years from the date on which
the cause of action ar[ose]."[23]  5 U.S.C. § 552a(g)(5).  *See also Hill v. New York Post*, NO. 08 Civ.
5777 (PAC)(FM), 2010 WL 2985906, at *3 (S.D.N.Y. July 29, 2010); *Baker*, 943 F. Supp. at 273
(citing *Shannon v. Gen. Elec. Co.*, 812 F. Supp. 308, 319 (N.D.N.Y. 1993)).

With respect to a cause of action arising under the Privacy Act, the statute of limitations starts
to run "when [the plaintiff] first knew of the existence of the [unlawful disclosure or inaccurate
contents of the] records." *Akutowicz v. United States*, 859 F.2d 1122, 1126 (2d Cir. 1988).  *See also*
*Bergman v. United States*, 751 F.2d 314, 316 (10th Cir.1984) (cause of action under Privacy Act
arises when plaintiff "knew or had reason to know" of error in his records), *cert. denied*, 474 U.S.
945 (1985).  Put simply, the statute of limitations begins to run when the plaintiff knew or should
have known of the initial Privacy Act  violation.  *Baker*, 943 F. Supp. at 273 (citing *Shannon*, 812
F. Supp. 308).   Furthermore, "if the plaintiff knew or should have known of the initial Privacy Act

---

[23]With respect to the Privacy Act, the Second Circuit has held that "where the
government's consent as sovereign to be sued is conditioned upon the filing of suit within a
specified period of time, strict compliance with that condition is a jurisdictional prerequisite."
*Akutowicz v. United States*, 859 F.2d 1122, 1126 (2d Cir. 1988) (quoting  *Diliberti v. United*
*States*, 817 F.2d 1259, 1261 (7th Cir.1987)).

violation, he cannot revive a potential cause of action simply because the violation continued to occur; he can allege subsequent violations only if there are subsequent events that occurred in violation of the Privacy Act." *Id*.

In the case at bar, plaintiff testified that there was one possible unauthorized disclosure of his VA medical records to someone who was *not* an officer or employee of the VA. *See* 5 U.S.C.A. § 552a (b)(1).   That disclosure allegedly occurred five or six years before Brockway's March 22, 2011 deposition. Doc. #42-4 (Brockway Depo.), p. 62, l. 17-24.   In particular, Brockway claims that approximately five or six years ago, he was called at home by a non-VA doctor, whom he identified as Dr. Carlson, asking if Brockway would like to receive psychotherapy from him.  *Id.*, p. 54, l. 10-24, p. 101, l. 12-19, p. 75, l.12 to p. 76, l.6.   Plaintiff has no knowledge of how Dr. Carlson obtained his name but believes that Dr. Carlson somehow accessed plaintiff's VA treatment record.  *Id.* Plaintiff bases this conclusion on a conversation he had with Dr. Rodrigues in which she stated that Dr. Carlson was a former VA staff member.  *Id.*, p.54, l. 10-20; p. 75, l.12 to p. 76, l.2.   Brockway further asserts that Rodrigues told him that she did not provide Dr. Carlson with any reference to plaintiff, but that Dr. Carlson visits the VA clinic routinely to determine if anyone needs his services. *Id*. Plaintiff thus concluded that Dr. Carlson, as a former VA employee, likely gained unauthorized access to plaintiff's medical records.  Doc. #43-1, p. 4.

 Plaintiff concedes that he knows of no person outside the VA other that Dr. Carlson who might have looked at his VA medical records.  Doc. #42-4 (Brockway Deposition), p. 76, l. 23 to p. 77, l. 4.  Accordingly, this alleged breach of privacy regarding Dr. Carlson, which Brockway testified occurred in approximately 2005 or 2006,  is the only alleged violation of the Privacy Act.

Crediting plaintiff's account and interpretation of Dr. Carlson's call, the Court nonetheless

27

must find plaintiff's action untimely under the Privacy Act in that he failed to file this lawsuit in district court until May 11, 2010 – well outside the requisite two-year statute of limitations.[24]   *See* 5 U.S.C. § 552a(g)(5), Doc. #1.   Plaintiff knew in 2005 or 2006 when Dr. Carlson phoned that Dr. Carlson was not his treating VA physician.  Plaintiff was thus on notice that a possible disclosure of his VA medical records had occurred yet he waited to file his lawsuit for four to five years. Because the statutory time limitation is "unquestionably an integral condition of the sovereign's consent to be sue under the Privacy Act, . . . plaintiff's failure to file suit within the time period specified in § 552a(g)(5) [*i.e.*, two years] deprives [this Court] of subject matter jurisdiction." *Akutowizc*, 859 F.2d at 1262.  Accordingly, plaintiff's claim, if construed as arising under the Privacy Act, must be dismissed.[25]

### D.    Violation of HIPAA

Lastly, plaintiff cannot bring his claim alternatively under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),42 U.S.C.A. § 1320, *et seq.*, because "[a]lthough the Second Circuit has never so held, district courts in this Circuit have overwhelmingly concluded that HIPAA does not create an express or implied private right of action."   *Spence v. Connor*, No. 3:10cv1925 (MRK), 2010 WL 7865084, at *3 (D. Conn. Dec. 16, 2010) (citing *Rzayeva v. United*

---

[24]Alternatively, if plaintiff were to claim that the VA failed to maintain his medical records accurately, pursuant to 5 U.S.C.A. § 552a (g)(1)(C), that claim would have accrued even earlier – on May 8, 2003 or March 17, 2004, as evidenced by Dr. Rodrigues's progress notes of those dates.   Doc. #42-4 (Rodrigues Affidavit), ¶¶ 8-9;  Doc. #43-1, p. 44.  Thus, his Privacy Act claim would still be untimely.

[25]Because the Court has concluded that plaintiff's action is clearly time-barred under both the FTCA and the Privacy Act, the Court declines to address whether, as defendant argues, plaintiff has failed to factually establish a violation of either statute.  *See* Doc. #42-1, p. 12-17.

*States*, 492 F. Supp.2d 60, 78–80 (D.Conn.2007)). *See also  Mele v. Hill Health Center,* 609 F.

Supp.2d 248, 255 (D.Conn. 2009)("Courts have found no private right of action under HIPAA.").

Moreover, "[e]very circuit court that has decided that issue has reached the same conclusion:

that HIPAA itself does not create a private right of action that a plaintiff can seek to enforce in

court." *Spence*, 2010 WL 7865084, at \*3 (citing *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir.2010)

("We agree with the district court that this claim fails because HIPAA does not create a private right

of action.")). Put simply, plaintiff cannot bring his otherwise time-barred claim under HIPAA.

## VI.    <u>CONCLUSION</u>

In the present action, summary judgment is appropriate in that "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed.R.Civ.P. 56(c).

First, to that extent that plaintiff's claim sounds in libel and/or slander, such a claim is

expressly excluded from recovery under the libel and slander exceptions to the FTCA , 28 U.S.C.

§ 2680(h).  Second, whether framed under the FTCA,  or the Privacy Act, plaintiff's claim is barred

by the respective applicable statute of limitations.[26]

Pursuant to the FTCA, a plaintiff must file an administrative claim within two years of

---

[26]The Court further notes that it finds no grounds for equitable tolling of either statute of limitations in that there is no evidence that "plaintiff [was] ignorant of his cause of action because of the defendant's fraudulent concealment" of his records and/or that VA employees engaged in any wrongful acts with respect to those records.  *See, e.g., Cerbone v. International Ladies′ Garment Workers′ Union*, 768 F.2d 45, 49-50 (2d Cir. 1985) ("equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit").

learning of the events giving rise to his claim.  *See* 28 U.S.C. § 2401(b).  The record reflects that as early as 2003, or as late as 2004,  plaintiff was aware of the facts giving rise to his claim, namely the alleged wrongful diagnosis of "bipolar disorder."  *See* Doc. #43-1, p. 44 (progress notes of May 8, 2003); Doc. # Doc. #42-4 (Rodrigues Affidavit), ¶ 9 (quoting progress notes of March 17, 2004). Therefore, plaintiff was required to file his administrative claim by 2005 or 2006.  Plaintiff filed his administrative claim on  January 19, 2010.   Doc. #1, p. 7.   Accordingly, because his action under the FTCA accrued more than two years prior to the filing of his administrative claim, that action  is time-barred.  The Court lacks jurisdiction over plaintiff's claim and must dismiss it.

Next, reviewing plaintiff's Complaint with the necessary liberality given a *pro se* pleading and thus construing plaintiff's action as a violation of the Privacy Act, 5 U.S.C. § 552a, *et seq*., the action remains untimely.  Plaintiff testified that the only time he  learned that someone other than a VA employee may have accessed his VA medical records was five to six years before his March 22, 2011 deposition – when he received a phone call from a "Dr. Carlson," inquiring whether plaintiff would like to receive psychotherapy from him.  The statute of limitations for claims arising under the Privacy Act expires two years after the plaintiff knew or should have known of the initial Privacy Act violation – *i.e.*, by 2007 or  2008, at the latest.  *See* 5 U.S.C. § 552a(g)(5).   Because plaintiff brought this action on  May 11, 2010  (Doc. # 1), his action, if construed as alleging violation of the Privacy Act, is untimely and consequently jurisdictionally barred.  The Court must dismiss it.

Finally,  plaintiff cannot bring his present claim for breach of confidentiality of his VA medical records under HIPAA, 42 U.S.C.A. § 1320, *et seq.*, because there is no private right of action under that statute.  *See, e.g.*, *Mele v. Hill Health Center,* 609 F. Supp.2d 248, 255 (D.Conn. 2009).

It should be clearly understood that the Court makes no finding as to whether Dr. Rodrigues or any other VA physician may have misdiagnosed plaintiff's condition as "bipolar disorder" under the FTCA, or whether  Dr. Carlson's call to plaintiff evidenced a possible unlawful disclosure of plaintiff's VA medical records pursuant to § 552a (b)(1) of the Privacy Act.[27]

One would hope that, as a veteran of the Armed Services of this country, plaintiff was afforded all due care, as Nall averred, with respect to the privacy of his VA medical records. However, the Court sympathizes with the distress felt by Mr. Brockway, who served the nation with honor as a member of the Armed Services, as he contemplates the possibility that unauthorized access may have been gained to his mental health records at the VA.  But federal district courts are courts of limited jurisdiction.  That means that they cannot right every wrong.  Particularly where the action is against the sovereign nation, a plaintiff must comply with all the limitations and conditions of suit contained in the governing statutes: including, as this case illustrates, limitations of time.

The law imposes certain time limitations within which one must file one's action under both the FTCA and the Privacy Act.   Plaintiff has not complied with those deadlines, most likely due to an understandable lack of knowledge of their existence, but the effect is to deprive this Court of jurisdiction.  At this point, there is no way to remedy plaintiff's untimely claims so the Court has no

---

[27]In not addressing the issue of whether plaintiff could establish a violation of either the FTCA or Privacy Act on the merits, the Court recognizes that it must not "reach[] out to decide issues that need not be resolved," which would be "the violation of what Chief Justice Roberts [once] called 'the cardinal principle of judicial restraint –  if it is not necessary to decide more, it is necessary not to decide more.'"   *Arar v. Ashcroft*, 585 F.3d 559, 630 n. 1 (2d Cir. 2009) (Calabresi, J., dissenting) (citing *PDK Labs., Inc. v. U.S. DEA*, 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring)).  *See also* Black's Law Dictionary (9th ed. 2009) (defining "judicial restraint" as "[t]he principle that, when a court can resolve a case based on a particular issue, it should do so, without reaching unnecessary issues").

choice but to dismiss them.

For the foregoing reasons, defendants' motion for summary judgment (Doc. #42) is GRANTED in its entirety. The Clerk of the Court is directed to enter judgment for defendant and close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
        June 13,  2012


                                        /s/Charles S. Haight, Jr.
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge